UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| ANTHONY DAVIS,<br><br>            Plaintiff,<br><br>    v.<br><br>N. AKABIKE,<br><br>            Defendant. | Case No. 1:19-cv-01504-DAD-JLT (PC)<br><br>**FINDINGS AND RECOMMENDATIONS TO DENY DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>(Doc. 28)<br><br>**14-DAY DEADLINE** |
|---|---|

      Anthony Davis,[1] a state prisoner proceeding *pro se* and *in forma pauperis*, filed this civil rights action under 42 U.S.C. § 1983. Defendant N. Akabike[2] has filed a motion for summary judgment. (Doc. 28.) Plaintiff filed a response in opposition, and Defendant filed a reply. (Docs. 31, 32.) For the following reasons, the Court RECOMMENDS that Defendant's motion for summary judgment be **DENIED**.

**I.    FACTUAL ALLEGATIONS**

      Plaintiff is currently housed at the Substance Abuse Treatment Facility. (Compl., Doc. 1 at ¶ 6.) He was previously housed at Pleasant Valley State Prison, where he was seen by a

---

[1] Plaintiff chooses to be referred to by the pronouns, "she" and "her." However, Plaintiff's pleadings use "he" and "him." For consistency, these findings and recommendations reference Plaintiff using the male pronouns.

[2] Defendant's name has changed from Akabike to Ndu. (Decl. of B. Feinberg, M.D., Doc. 28-5 at ¶ 6.) The Court will refer to this doctor as "Defendant" or "Dr. Ndu"

primary care provider for a number of issues on January 15, 2014. (Feinberg Decl., Ex. B, Doc. 28-5 at 10.) Plaintiff complained of right big toe pain, which he described as constant, throbbing, and 7/10 in intensity, and requested to be provided with an orthopedic shoe. (Feinberg Decl., Ex. B., Doc. 28-5 at 10.) The PCP examined Plaintiff, noted that Plaintiff's big toe to be mildly swollen but nontender, and suspecting a bunion, referred Plaintiff to a podiatrist. (*Id.* at 10–11.)

On January 22, 2014, Plaintiff was seen by Dr. Kristal for a podiatry evaluation. (*Id.* at 12.) Dr. Kristal diagnosed osteoarthritis at the first metatarsophalangeal joint[3] and ordered x-rays for evaluation. (*Id.* at 13.) X-rays taken two days later showed "[m]ild to moderate right first metatarsal phalangeal osteoarthritis. The joint spaces are otherwise well preserved. Bone mineralization is normal. No significant soft tissue swelling is seen." (*Id.* at 14.) Plaintiff received "extra depth shoes' to remove shoe pressure from the first [metatarsal] head." (*Id.* at 15–16.)

On August 6, 2014, Dr. Kristal approved custom molded orthotic shoe inserts and orthotic shoes, which significantly reduced Plaintiff's pain and allowed him to continue walking. (Doc. 1 at ¶ 15; Doc. 28-5 at 17.) On December 9, 2014, Plaintiff received the orthotics. (Doc. 28-5 at 21.) Plaintiff states that he continued receiving the shoes and inserts for five years. (Doc. 1 at ¶ 15.)

On October 31, 2016, Plaintiff transferred from PVSP to the SATF. (Feinberg Decl., Doc. 28-5 at ¶ 13.) Plaintiff was seen by Defendant, who has been a staff physician at SATF since 2015. (*Id.* at ¶ 7.) Plaintiff saw Defendant on October 29, 2018, December 20, 2018, January 29, 2019, and February 20, 2019. (*Id.* at ¶ 14.) Neither foot pain nor orthopedic footwear were discussed at these appointments. (*Id.*)

On March 19, 2019, Defendant saw Plaintiff for multiple issues, including complaints of pain in his right big toe and a request for replacement orthopedic shoes. (*Id.* at ¶ 15.) Plaintiff advised Defendant that "she was diagnosed with arthritis of Right 1st metatarsal joint by podiatry." (Doc. 28-5 at 33.) Defendant examined Plaintiff's right foot and found no metatarsal

---
[3] The first metatarsophalangeal joint, or the MPJ or MTP joint, is at the base of the big toe. (Feinberg Decl., Doc. 28-5 at ¶ 9 n.1.)

joint tenderness and no foot deformity. (*Id.*) Defendant determined that Plaintiff did not meet the criteria for orthopedic shoes. (*Id.* at 34.)

On May 21, 2019, Plaintiff filed a health care grievance for the issuance of replacement orthotic shoes. (*Id.* at 35.) The nurse who interviewed Plaintiff advised that the "InterQual Criteria[4] for orthotics states deformity of foot, chronic weakness of lower extremity, chronic ankle instability, and limb length discrepancy of greater than or equal to 1.5 inches." (*Id.*) The nurse informed Plaintiff that he does not meet the criteria for orthotic shoes. (*Id.*) Plaintiff was taking naproxen for pain.

Plaintiff had appointments with Defendant on July 1, 2019, and on September 19, 2019, with Dr. Davydov, but neither foot pain nor orthopedic footwear were discussed at these appointments. (*Id.* at 37–41.)

On October 9, 2019, Plaintiff saw Defendant again for various issues. Notes indicate that Plaintiff "complained of chronic pain right great toe and requests orthotics referral for therapeutic shoes. She says her right foot hurts when she wakes up and with prolonged walking. She states she will file a law suit (sic) because her appeal was denied at the local and HQ." (*Id.* at 42.) Defendant observed that the Plaintiff walked in and out of the clinic "with no apparent distress" and normal gait. (*Id.* at 42; *accord* Ndu Decl. 28-4 at 2.) Defendant examined Plaintiff's right foot and opined that the great toe was not tender to palpitation or swollen, with "no significant deformity." (28-4 at 2)

Defendant ordered another x-ray of the right foot for evaluation but again assessed that Plaintiff "does not meet criteria for referral to orthotics." (Doc. 28-5 at 42.) The x-ray report revealed mild first MTP joint osteoarthritis. (*Id.* at 3.)

On October 28, 2019, Plaintiff saw Defendant for her foot pain, complaining that the naproxen was not working. (Doc. 28-5 at ¶ 46.) Plaintiff requested to try "adjuncts," and

---

[4] "InterQual criteria are a library of evidence-based clinical decision support criteria used to assess the medical necessity of a proposed treatment." *Griffin v. Do-Williams*, No. 2:16-cv-01435-WBS-CKD PC, 2019 WL 3975358, at *8 (E.D. Cal. Aug. 22, 2019), *report and recommendation adopted*, No. 2:16-cv-1435-WBS-CKD P, 2019 WL 6339928 (E.D. Cal. Nov. 27, 2019), *aff'd*, 846 F. App'x 518 (9th Cir. 2021).

3

1  Defendant provided Plaintiff with information on nortriptyline as an alternative to treat the pain.
2  (*Id.*)
3        On November 14, 2019, Plaintiff advised Defendant that he did not want to take the
4  nortriptyline because of the side effects. (*Id.* at 48.) He also declined duloxetine and capsaicin
5  and indicated that he wanted to try something mild, and he requested gabapentin. (*See id.*)
6        At Plaintiff's appointment with Defendant on December 2, 2019, Plaintiff made no
7  complaints about his foot pain. (*Id.* at 51.) Progress notes from January 14, 2020, reflect that x-
8  rays of the right foot showed mild first MTP joint osteoarthritis. (*Id.* at 54.)
9        Plaintiff filed a health care grievance, SATF HC 19000466, which was denied at the First
10 Level on June 4, 2019, and at the headquarters' level on September 19, 2019.
11       Plaintiff filed this action on October 23, 2019, asserting a single claim against Defendant
12 in her individual capacity, alleging deliberate indifference to Plaintiff's Eight Amendment right
13 to be free from cruel and unusual punishment. (Doc. 1.) Plaintiff alleges that, for seven months,
14 Defendant delayed medical attention, denied medical care, and failed to issue orthotic
15 shoes/inserts, which have caused Plaintiff severe pain and disability. (Doc.1 at ¶ 31.) Plaintiff
16 alleges that Defendant reviewed Plaintiff's medical records and was aware of Plaintiff's medical
17 history but did not investigate and properly diagnose Plaintiff's condition and provide effective
18 treatment. (*Id.* at ¶¶ 20, 22, 28, 29.) Defendant was aware of Plaintiff's complaints of pain but
19 ignored them and failed to treat with adequate pain medication or orthotic shoes and inserts. (*Id.*
20 at ¶¶ 19, 21, 23, 27, 30, 32, 33, 34, 36–43.) Plaintiff contends that he has suffered, is suffering,
21 and will continue to suffer severe pain in her right foot, and the failure to issue orthotic
22 shoes/inserts will likely cause permanent, irreparable harm to his foot and leg. (*Id.* at ¶ 53, 54.)
23 Plaintiff seeks declaratory judgment, injunctive relief, and damages.
24       Defendant has moved for summary judgment. (Doc. 28). Defendant argues that Plaintiff's
25 disagreement with prison medical personnel regarding diagnosis and treatment does not establish
26 a deliberate indifference claim. (*Id.* at 2.) Defendant further argues that, even if the Court finds a
27 constitutional violation, Defendant is protected by qualified immunity. (Doc. 28) Plaintiff has
28 filed a response in opposition. (Doc. 31.)

## II. LEGAL STANDARDS

### A. Summary Judgment

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of proving the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The moving party may accomplish this by presenting evidence that negates an essential element of the non-moving party's case. *Id.* Alternatively, the movant can demonstrate that the non-moving party cannot produce evidence to support an essential element of his claim that must be proven at trial. *Id.*; Fed. R. Civ. P. 56(c)(1)(B). "[A] complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322–23.

If the moving party meets this initial showing, the burden shifts to the non-moving party to establish "specific facts showing a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The non-moving party cannot simply rely on the pleadings and conclusory allegations in an affidavit. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990); *see also Celotex*, 477 U.S. at 324. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, when deciding a motion for summary judgment, the court must view any inferences drawn from the underlying facts in a light most favorable to the non-moving party. *Id.*

The Ninth Circuit has "held consistently that courts should construe liberally motion papers and pleadings filed by *pro se* inmates and should avoid applying summary judgment rules strictly." *Soto*, 882 F.3d at 872 (quoting *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010)). While prisoners are relieved from strict compliance, they still must "identify or submit some competent evidence" to support their claims. *Soto*, 882 F.3d at 872. Plaintiff's verified complaint may serve as an affidavit in opposition to summary judgment if based on personal

knowledge and specific facts admissible in evidence. *Lopez v. Smith*, 203 F.3d 1122, 1132 n.14 (9th Cir. 2000) (en banc).

### B. Eighth Amendment Medical Indifference

Where a prisoner's Eighth Amendment claims arise in the context of medical care, the prisoner must allege and prove "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). An Eighth Amendment claim "includes 'both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard—deliberate indifference.'" *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) (citation omitted). To meet the objective element of the standard, a plaintiff must demonstrate the existence of a serious medical need. *Estelle*, 429 U.S. at 104. "A 'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1991), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc) (quoting *Estelle*, 429 U.S. at 104); *see also Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006).

The subjective element concerns the defendant's response to a prisoner's serious medical need. *McGuckin*, 974 F.2d at 1059. To act with deliberate indifference, a prison official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Thus, a defendant is liable if he knows that plaintiff faces "a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id.* at 847. "It is enough that the official acted or failed to act despite his knowledge of a substantial risk of harm." *Id.* at 842.

To demonstrate deliberate indifference, a plaintiff must show that the course of treatment taken is "medically unacceptable under the circumstances and that the defendants chose this course in conscious disregard of an excessive risk to the plaintiff's health." *Hamby v. Hammond*, 821 F.3d 1085, 1092 (9th Cir. 2016) (citations and punctuation omitted); *accord Colwell v. Bannister*, 763 F.3d 1060, 1068 (9th Cir. 2014). "Deliberate indifference is a high legal standard.

A showing of medical malpractice or negligence is insufficient to establish a constitutional deprivation under the Eighth Amendment." *Toguchi v. Chung,* 391 F.3d 1051, 1060 (9th Cir. 2004).

In applying this standard, the Ninth Circuit has held that before it can be said that a prisoner's civil rights have been abridged, "the indifference to his medical needs must be substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." *Broughton v. Cutter Labs.,* 622 F.2d 458, 460 (9th Cir. 1980) (citing *Estelle*, 429 U.S. at 105–06). "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106; *see also Anderson v. Cty. of Kern*, 45 F.3d 1310, 1316 (9th Cir. 1995). Even gross negligence is insufficient to establish deliberate indifference to serious medical needs. *See Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990).

Under the Eighth Amendment, differences of opinion between a physician and an inmate, or between medical professionals, concerning appropriate medical care does not rise to deliberate indifference. *Hamby v. Hammond*, 821 F.3d 1085, 1092 (9th Cir. 2016) (quoting *Snow v. McDaniel,* 681 F.3d 978, 987 (9th Cir. 2012), *overruled in part on other grounds by Peralta v. Dillard,* 744 F.3d 1076, 1083 (9th Cir. 2014) (en banc); *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989) (a prisoner's mere disagreement with diagnosis or treatment does not support a claim of deliberate indifference). To establish that a difference of opinion amounted to deliberate indifference, the prisoner "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances" and "that they chose this course in conscious disregard of an excessive risk to [the prisoner's] health." *See Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996).

The complete denial of medical attention may constitute deliberate indifference. *See Toussaint v. McCarthy*, 801 F.2d 1080, 1111 (9th Cir. 1986). However, a physician need not fail to treat an inmate altogether to violate that inmate's Eighth Amendment rights. *Ortiz v. City of Imperial*, 884 F.2d 1312, 1314 (9th Cir. 1989) (per curiam). A failure to competently treat a

serious medical condition, even if some treatment is prescribed, may constitute deliberate indifference in a particular case. *Id.*

Delay in providing medical treatment or interference with medical treatment may also constitute deliberate indifference. *See Lopez*, 203 F.3d at 1131; *see also Estelle*, 429 U.S. at 104–05 (holding that delay in providing medical care may manifest deliberate indifference). To establish a claim of deliberate indifference arising from a delay in providing care, a plaintiff must show that the delay led to further injury. *See Berry v. Bunnell*, 39 F.3d 1056, 1057 (9th Cir. 1994); *McGuckin*, 974 F.2d at 1060; *Wood v. Housewright*, 900 F.2d 1332, 1335 (9th Cir. 1990); *Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985). In this regard, "[a] prisoner need not show his harm was substantial; however, such would provide additional support for the inmate's claim that the defendant was deliberately indifferent to his needs." *Jett*, 439 F.3d at 1096; *see also McGuckin*, 974 F.2d at 1060.

### C. Qualified Immunity

Government officials enjoy qualified immunity from damages[5] unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The initial inquiry is whether the facts, taken in a light most favorable to the plaintiff, show that the defendant's conduct violated a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The next inquiry is whether that right was clearly established. *Id.* "Clearly established" means that "the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* at 202[6]; *accord Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

Finally, the court must determine whether a reasonable officer in similar circumstances would have thought his conduct was unconstitutional. *See id.* at 205. Even if the plaintiff has alleged a violation of a clearly established right, the official is protected by qualified immunity if he "reasonably but mistakenly believed that his . . . conduct did not violate that right." *Jackson v.*

---

[5] "Claims for injunctive and declaratory relief are unaffected by qualified immunity." *Hydrick v. Hunter*, 669 F.3d 937, 942 (9th Cir. 2012) (stating plaintiffs could proceed with claims for declaratory and injunctive relief, notwithstanding the court's holding on qualified immunity).

[6] The district court has discretion to determine which of the first two *Saucier* factors to analyze first. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

8

*City of Bremerton*, 268 F.3d 646, 651 (9th Cir. 2001); *see also Saucier*, 533 U.S. at 205. In general, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

Although both the "clearly established right" and "reasonableness" inquiries are questions of law, where there are factual disputes as to the parties' conduct or motives, the case cannot be resolved at summary judgment on qualified immunity grounds. *See Torres v. City of Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011) ("Where the objective reasonableness of an officer's conduct turns on disputed issues of material fact, it is a question of fact best resolved by a jury. . , only in the absence of material disputes is it a pure question of law." (internal quotation marks and citations omitted)). The plaintiff bears the burden of proving that the right allegedly violated was clearly established at the time of the violation; if the plaintiff meets this burden, then the defendant bears the burden of establishing that the defendant reasonably believed the alleged conduct was lawful. *See Sorrels v. McKee*, 290 F.3d 965, 969 (9th Cir. 2002).

In an Eighth Amendment medical indifference context, "we must ask the narrower question: viewing the evidence most favorably to [the nonmoving party], and given existing case law at that time, was it 'beyond debate' that the prison officials pursued a medically unreasonable course of treatment . . . ?" *Hamby*, 821 F.3d at 1092

### III. DISCUSSION

#### A. Eighth Amendment Medical Indifference

In her motion, Defendant argues that she is entitled to summary judgment because she did not act with deliberate indifference. (Doc. 28-2 at 6.) Dr. Ndu argues that Plaintiff cannot show that she knowingly caused Plaintiff to suffer pain, injury, or delay in treatment. According to Defendant, Plaintiff can only show disagreement with Defendant's decision not to prescribe orthopedic shoes, which is insufficient to establish deliberate indifference. Defendant argues that because Plaintiff cannot establish deliberate indifference, Defendant is entitled to judgment as a matter of law. (*Id.*)

Effective February 2015, the California Correctional Health Care Services adopted new procedures for durable medical equipment ("DME") and medical supplies. (Doc. 28-5 at 57.)

These procedures provide: "DME and medical supplies shall be distributed by health care staff based on medical necessity as defined in the Durable Medical Equipment and Medical Supply Formulary ("formulary") in effect unless approved through the nonformulary request process as outlined in Section IV(D)." (*Id.* at 58.)

The procedures also govern situations such as Plaintiff's, where she has been transferred within CDCR:

> 1. Patients transferred from one CDCR institution to another shall be allowed to maintain possession of DME and/or medical supplies if it does not pose a threat to safety and security as determined by custody staff and as supported by documented evidence.
>
> 2. At the receiving institution, all previously prescribed DME and medical supplies shall continue to be provided unless a PCP at the receiving institution re-evaluates the patient and determines the DME or medical supplies are no longer medically necessary to ensure parties have equal access to prison services, programs, or activities.

(28-5 at 61.)

Orthopedic shoes are DME that may be requested only if a medical provider determines they are medically necessary. (*See* Doc. 28-2 at 7.) The record reflects that, in response to Plaintiff's complaints of pain in the right foot, Defendant examined Plaintiff's foot, observed Plaintiff's gait as normal, reviewed old x-rays, ordered new x-rays, and offered an alternative pain medication for Plaintiff's consideration. (*Id.*) According to Defendant, "[o]rthopedic shoes could be requested if the patient had (1) ulcers secondary to peripheral vascular disease; (2) severe diabetic neuropathy; (3) shoes attached to prosthesis; (4) significant deformity of the ankle or foot; or (5) limb length discrepancy." (Def. Decl., Doc. 28-4 at ¶ 3.) Defendant argues that she responded to Plaintiff's complaint and recommended medical treatment based on her clinical judgment, training, and experience, and Plaintiff's speculation about necessary treatment is insufficient to establish a deliberate indifference claim. (Doc. 28-2 at 7.)  Additionally, Defendant argues that she did not act with a culpable state of mind; she did not knowingly or intentionally cause Plaintiff to experience pain, suffering, or injury. (*Id.* at 7–8.)

Plaintiff's differing opinion, as well as the prior opinions of the podiatrist, Dr. Kristal, that orthotic shoes are medically necessary, does not establish deliberate difference. *Sanchez v. Vild*,

10

891 F.2d 240, 242 (9th Cir. 1989) (finding that a difference of opinion between medical providers of Plaintiff's request for orthopedic boots is not sufficient to establish deliberate indifference); *Wilhelm*, 680 F.3d at 1122–23 (citing *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1986)). A showing of nothing more than a difference of medical opinion as to the need to pursue one course of treatment over another generally is not enough to establish deliberate indifference. *Toguchi*, 391 F.3d at 1059–60.

Plaintiff's complaints of pain raise genuine issues of material fact that preclude summary judgment. First, Plaintiff has arguably demonstrated that he has a "serious" medical need because, left untreated, would result in the unnecessary and wanton infliction of pain. *McGuckin*, 974 F.2d at 1059. The x-rays showed mild osteoarthritis of the first metatarsal joint, which could cause pain to the Plaintiff, which he describes as constant, severe, and excruciating. (*See* Compl., Doc. 1 at 10, 25, 27, 30, 43.)

Second, Plaintiff must demonstrate deliberate indifference and show that the course of treatment taken is "medically unacceptable under the circumstances and that the defendants chose this course in conscious disregard of an excessive risk to the plaintiff's health." *Hamby*, 821 F.3d at 1092. For a deliberate indifference claim, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

Plaintiff has alleged plausible facts establish that Defendant drew such an inference. Plaintiff consistently complained of pain in his foot, and he disputes that there was no tenderness upon examination. The x-rays revealed painful conditions of thoracic spine arthrosis. (Doc. 28-5 at 46.) Plaintiff advised Defendant that the Naproxen was not relieving the pain, to which Defendant responded that over-the-counter medications, such as NSAIDS, are typically used to treat pain from arthritis. Clinical progress notes indicate that Plaintiff did not want to take Duloxetine or Nortriptyline because of their side effects and capsaicin was too strong. (Doc. 28-5 at 48.) Plaintiff stated that he wanted something mild and requested Gabapentin. (*Id.*)

A prisoner is not entitled to a prescription medication of his choice; the denial of a specific medication does not constitute an Eighth Amendment violation. *Hall v. Kirkegard*, 806 F.

11

App'x 601, 603 (9th Cir. 2020) (citing *Toguchi*, 391 F.3d at 1058–60); *Wyres v. Zhang*, No. 19-CV-2050-TWR (KSC), 2021 WL 3772387, at *4 (S.D. Cal. Aug. 25, 2021). However, Plaintiff has a right to medication under the Eighth Amendment. *Tilford v. Chau*, No. 12cv2507-GPC (MDD), 2014 WL 2965320, at *3 (S.D. Cal. July 1, 2014). After Plaintiff declined to take duloxetine or nortriptyline, it appears that Defendant took no further effort to treat Plaintiff, for example, with a milder pain medication, a referral to an orthopedic specialist, or submit a nonformulary request for the DME. (*See* Doc 28-5 at 60.)

Moreover, she did so knowingly, given Plaintiff's repeated complaints of pain. Whether Plaintiff's condition was sufficiently serious such that Defendant's failure to treat it would result in the "unnecessary and wanton infliction of pain," must be considered. *See McGuckin*, 974 F.2d at 1059. Factors indicating seriousness are: (1) whether a reasonable doctor would think that the condition is worthy of comment; (2) whether the condition significantly impacts the prisoner's daily activities; and (3) whether the condition is chronic and accompanied by substantial pain. *See Lopez v. Smith*, 203 F.3d 1122, 1131–32 (9th Cir. 2000) (en banc). In this instance, (1) a podiatrist prescribed orthotic shoes for Plaintiff, (2) Plaintiff indicated that walking causes pain, and (3) Plaintiff's medical records indicate that his condition is chronic and accompanied by pain.

Deliberate indifference is less stringent in medical needs cases than in other Eighth Amendment contexts because, in general, the duty to provide inmates with medical care does not conflict with competing penological concerns. *See McGuckin*, 974 F.2d at 1060. Thus, the court needs not give deference to the judgment of prison officials as to decisions concerning medical needs. *See Hunt v. Dental Dep't*, 865 F.2d 198, 200 (9th Cir. 1989). Taken in a light most favorable to Plaintiff, the record raises a genuine dispute as to whether Plaintiff's pain was sufficiently serious that Defendant's actions constituted deliberate indifference.

**B.  Qualified Immunity**

Defendant argues that, even if there is a triable issue of fact as to whether Defendant was deliberately indifferent, Defendant is entitled to qualified immunity because Plaintiff cannot show a violation of a constitutional right that was clearly established. (Doc. 28-2 (citing *Saucier*, 533

U.S. at 201).) In analyzing a qualified immunity defense, the court must consider the following: (1) whether the alleged facts, taken in the light most favorable to the plaintiff, demonstrate that defendant's conduct violated a statutory or constitutional right; and (2) whether the right at issue was clearly established at the time of the incident. *Saucier*, 533 U.S. at 201. Qualified immunity "gives ample room for mistaken judgments" and protects "all but the plainly incompetent or those who knowingly violate the law." *Hunter v. Bryant,* 502 U.S. 224, 229 (1991) (citations omitted).

In a light most favorable to the Plaintiff, the alleged facts plausibly demonstrate that Defendant knowingly violated Plaintiff's Eighth Amendment right to medical treatment, including pain management. To determine whether the right was clearly established, the court must cite to existing precedent such that any reasonable official would understand that she was violating the prisoner's constitutional rights. *Id.*

In similar cases involving foot problems, orthotics, and foot pain, decisions by the federal district courts in California are sufficient to place the Defendant on notice of clearly established Eighth Amendment rights. In *Goods v. Los Angeles Cty. Sheriff*, the Central District of California cited to several cases that led the court to find triable issues of fact with regard to Plaintiff's allegations of a "serious medical need" or "an objectively serious medical condition."

> Based on the undisputed evidence presented here that plaintiff was suffering from a condition for which he was prescribed orthopedic shoes by a doctor, the Court finds that a triable issue of fact exists with respect to whether plaintiff had a "serious medical need" or "an objectively serious medical condition" on April 8, 2009. *See Hollis v. Lee*, 2007 WL 963319, at *7 (N.D. Cal. Mar. 30, 2007) (finding triable issue of fact raised as to whether plaintiff's foot problems constituted a "serious medical need" where evidence presented that plaintiff had been prescribed orthotics by a doctor); *Lopez v. Scribner,* 2007 WL 184831, at *9 (E.D. Cal. Jan.23, 2007) (finding triable issue of fact raised as to whether plaintiff suffered a serious medical condition with respect to his feet or need for special shoes where evidence presented that plaintiff had required special shoes and been issued medical chronos accordingly), *Report and Recommendation Adopted by* 2007 WL 781432 (E.D. Cal. Mar. 13, 2007); *see also Saunders v. Horn*, 959 F. Supp. 689, 694 (E.D. Pa. 1996) ("The plaintiff has alleged that a physician prescribed orthopedic shoes for him in 1984. This means that he has a serious medical need."), *Report and Recommendation Adopted by* 960 F. Supp. 893 (E.D. Pa. 1997)).

*Goods v. Los Angeles Cty. Sheriff*, No. CV 11-2948-JGB (RNB), 2014 WL 2533777, at *9 (C.D. Cal. May 29, 2014). Given this precedent, a reasonable official would understand that the failure to treat foot pain adequately violates prisoner's constitutional rights. *Id.* Under the circumstances of this case, Defendant has not demonstrated that she is protected by qualified immunity.

**IV.      CONCLUSION**

Taking the evidence in the light most favorable to Plaintiff, the evidence raises material issues of genuine fact. Accordingly, the Court RECOMMENDS that Defendants' motion for summary judgment (Doc.) be **DENIED**.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). **Within 14 days** after being served with these findings and recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may result in waiver of the right to appeal the district court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **October 27, 2021**                    _ **/s/ Jennifer L. Thurston**
                                                                  CHIEF UNITED STATES MAGISTRATE JUDGE